# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Gevonte D. Hunter,　　　　　　　　　　　　　　　Case No. 5:15CV1957

　　　　　Petitioner

　　v.　　　　　　　　　　　　　　　　　　　　　**ORDER**

Alan J. Lazaroff, Warden,

　　　　　Respondent

　　　　This is a state prisoner's habeas case under 28 U.S.C. § 2254.

　　　　In July, 2012, the petitioner, Gevonte Hunter, went on trial with his codefendant, one Alan Lollis, in the Common Pleas Court of Summit County, Ohio, on charges of aggravated murder and aggravated robbery stemming from the death of Salim Suleiman. *State v. Hunter*, 2014-Ohio-910, ¶¶2–3 (Ohio App. 2014).

　　　　The prosecution's theory was that Lollis planned to rob Suleiman, a marijuana dealer, and relied on Hunter to execute the robbery. During the robbery Hunter shot Suleiman in the chest, whether as part of Lollis's plan or on his own initiative after the robbery went bad.

　　　　A series of text messages between Suleiman and a person identified in Suleiman's cell phone contacts list as "Young Homie" established that Young Homie feigned to meet Suleiman at Kelley's Carryout in Akron shortly after 5:00 p.m. on July 11, 2011. *Id.* at ¶19. Each of the text messages that Young Homie's phone sent to Suleiman's "ended with the signature "$tackOr$tarve." *Id.*

Meanwhile, Young Homie's cell phone was exchanging text messages with a Nokia cell phone that was registered to Hunter's mother. *Id.* at ¶¶20–21. In the contacts section of this phone, the number associated with Young Homie in Suleiman's phone was associated with a contact named "Beez."

In these messages, Beez asked, "Wat up he on his way to kelly tare em up just hit me up wen u done," he described the make and model of Suleiman's car, and later wrote "Bro get to da east cut me n cal me asap." *Id.* (*sic* throughout). Like the messages from Young Homie to Suleiman, the messages from Beez to the Nokia phone ended with the "$tackOr$tarve" signature.

Circumstantial evidence beyond the phone's registration to Hunter's mother linked Hunter to the crime. Perhaps most damning, police recovered the Nokia phone from the passenger-side seat of Suleiman's car. *Id.* at ¶¶15, 20.

Hunter's aunt, Lashawna Boswell, testified that she was at her cousin's house on Fernwood Drive, near Kelley's Carryout, on the day of the shooting. *Id.* at ¶12. About a minute before the shooting, she testified, she saw Hunter walk by her cousin's house on a path "on which people can walk to get to Kelley's." *Id.* (Boswell added, however, that she had been so drunk at that time that "she did not think her identification of Mr. Hunter was reliable." *Id.* at ¶13.).

Tasha Thomas testified that her friend Sandy and Sandy's boyfriend, whom she knew as "Bezel" – and who was, in fact, Lollis – lived at her house in summer, 2011. *Id.* at ¶22. According to Thomas, Lollis had spoken to her about a "robbery gone bad." *Id.* Lollis had said that "he had set up a robbery at Kelley's targeting 'some Arab,'" and that he was "'texting some dude telling him what the dude in the car had on, what kind of car he was driving.'" *Id.* Thomas

2

also testified that the number in her cell phone for Lollis "matched the number of 'Young Homie'" in Suleiman's phone "and 'Beez'" in Hunter's mother's Nokia phone. *Id.*

Hunter presented an alibi defense. Through the testimony of his mother and grandmother, Hunter established that he regularly lost his personal possessions, including his cell phones – one of which (the Nokia) he had supposedly lost only recently. *Id.* at ¶24.

The jury convicted Hunter (and Lollis), and the trial court sentenced Hunter to between thirty-three years and life imprisonment. The Ohio Court of Appeals affirmed the convictions and sentence on direct appeal, and the state courts rejected Hunter's various efforts to obtain post-conviction relief and reopen, on grounds of ineffective assistance of counsel, the direct appeal.

Hunter then retained new counsel and filed his habeas petition. He alleges, *inter alia*, that the admission of Tasha Thomas's testimony violated his Confrontation Clause rights as understood by the Supreme Court in *Bruton v. U.S.*, 391 U.S. 123 (1968).

Pending is Magistrate Judge Knepp's Report and Recommendation, which recommends that I dismiss the petition as untimely. (Doc. 23). Hunter has filed an objection, and the Warden has responded.

On de novo review of the R&R, *see* 28 U.S.C. § 636(b)(1), I overrule the objection, adopt the R&R as the order of the court, and dismiss the petition with prejudice.

Hunter appropriately concedes that his petition is untimely.

As the Magistrate Judge explained, his judgment of conviction became final on April 28, 2014, when his time to seek review in the Ohio Supreme Court expired. (Doc. 23 at 11). Hunter then had one year in which to file his habeas petition, but Hunter did not file until September 22, 2015, which was nearly five months too late. (*Id.* at 11–12).

Hunter contends that he is entitled to equitable tolling because "he has been diligent in pursuing his rights." (Doc. 24 at 8).

He emphasizes that he did not obtain counsel until August, 2015, and that counsel immediately began investigating the case, "discover[ed] the [*Bruton*] error outlined herein," and filed the petition less than a month and a half later. (*Id.*). From there, Hunter continues, counsel "then sought to stay these proceedings" so that he could return to the Ohio courts and litigate the *Bruton* claim. (*Id.*). Finally, Hunter contends that none of his prior attorneys told him about the one-year limitations period for filing a habeas petition. *Id.*

I agree with Magistrate Judge Knepp that these circumstances do not warrant equitable tolling.

First, the statute of limitations expired in April, 2015. Hunter's alleged diligence in August, 2015 – four months after the filing window closed – is therefore not relevant to proving that he deserves equitable tolling. *Cf. Carneal v. Crews*, 2011 WL 2710222, *13 (W.D. Ky. 2011) ("Equitable tolling does not restart the period of limitations[.]").

Second, Hunter's lack of counsel and ignorance of the law do not qualify as extraordinary circumstances, as the Magistrate Judge correctly explained. (Doc. 23 at 12).

Third, while Hunter argues that his case involves a miscarriage of justice, he does not allege that he is actually innocent under the rule of *McQuiggen v. Perkins*, 569 U.S. 383 (2013).

Finally, to the extent that Hunter's miscarriage-of-justice argument depends on the merits of his *Bruton* claim, I note only that it is not clear that *Bruton*, in fact, made Lollis's statement inadmissible. This is because Lollis's statement, which he made to Thomas on his own initiative, outside the context of a police interrogation or other formal setting, and with apparently no suggestion that it was intended to be evidence in a criminal prosecution, was probably not

testimonial, and the Confrontation Clause would not have blocked Thomas from relaying that statement. *See U.S. v. Collins*, 799 F.3d 554, 576 (6th Cir. 2015) (statement is testimonial only if "the declarant . . . intended to bear testimony against the accused"); *U.S. v. Johnson*, 581 F.3d 320, 325–26 (6th Cir. 2009) (admission of codefendant's non-testimonial inculpatory statement does not violate *Bruton*).

## Conclusion

It is, therefore

ORDERED THAT:

1. Hunter's objection to the Magistrate Judge's Report and Recommendation (Doc. 24) be, and the same hereby is, overruled;

2. The Magistrate Judge's Report and Recommendation (Doc. 23) be, and the same hereby is, adopted as the order of the court;

3. Hunter's petition for a writ of habeas corpus (Doc. 1) be, and the same hereby is, dismissed with prejudice; and

4. No certificate of appealability will issue.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge